FILED
2021 Jan-12 AM 08:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JUDITH WILLS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE** |
| | ) | **NUMBER: _____** |
| **HARTFORD LIFE** | ) | |
| **INSURANCE COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Judith Wills, and hereby files her complaint against Hartford Life Insurance Company.

## PARTIES

1.     The Plaintiff, Judith Wills ("Ms. Wills"), is an insured under Group Long Term Disability Plan for employees of North Shore – Long Island Jewish Health System Inc. identified as Group Insurance Policy GLT-674570 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2.     Defendant, Hartford Life Insurance Company ("Hartford"), is the Administrator of the Plan. Upon information and belief, Hartford is a foreign corporation incorporated in the State of Connecticut, which conducts business generally in the State of Alabama and specifically within this District.

1

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Ms. Wills brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3).  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4.     The Plaintiff in this case was subjected to improper claim handling procedures by Hartford as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Ms. Wills' valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit Plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983).  Ms. Wills, as an employee insured for disability, was supposed to be treated as a beneficiary by Hartford as a statutory fiduciary. Instead, Hartford has breached those duties and victimized Ms. Wills by

engaging in improper claim handling procedures. As described in more detail below, Hartford has clearly engaged in bad faith handling and Ms. Wills, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Ms. Wills is an insured for benefits under the Plan. Hartford is the administrator of the Plan. The Plan provides insureds, like Ms. Wills, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6.     At all relevant times, Ms. Wills was employed by North Shore Health System Inc. and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7.     Ms. Wills, a woman fifty-eight (58) years of age, worked until her disabilities forced her to stop working on or about August 11, 2014.

8.     Ms. Wills was employed as a Registered Nurse, whose job duties required that she perform a plan of care for patients using nursing processes of assessment, diagnosis, outcome identification, planning, implementation, and evaluation of patient care. Additional duties included collaboration with physicians, using clinical judgment to coordinate patient care, and directing or delegating activities of the patient care unit team. Ms. Wills' position as a Registered Nurse also required rapid and effective action during emergency situations, applying

medical care such as dressing or IV drips, and administering medications correctly and safely.

9.      Ms. Wills' medical disabilities include cervical post-traumatic sprain and strain syndrome, cervical nerve root impingement, cervical spine pain, herniated lumbar intervertebral disc, lesion of left lumbosacral nerve root, arm and shoulder pain, lumbar post-traumatic sprain and strain syndrome, cervical radiculopathy, lumbar radiculopathy, and post-surgical pain. The symptoms of her impairments and the side effects of the medications and treatment prescribed render Ms. Wills unable to perform any job.

10.     Ms. Wills was approved for and began receiving LTD benefits from Hartford on March 17, 2015.

11.     Ms. Wills received continuous LTD benefits from March 17, 2015 to May 17, 2017, totaling over two (2) years of continuous benefits.

12.     Ms. Wills' LTD benefits were paid from March 17, 2015 to February 14, 2017 under the "Own Occupation" standard, and from February 15, 2017 to May 17, 2017 under the "Any Occupation" standard.

13.     Ms. Wills' LTD benefits were approved and paid from March 17, 2015 to May 17, 2017 because Hartford determined that she was prevented from performing one or more of the essential duties of her occupation and, following twenty-four months of paid benefits, any occupation.

14.    By letter dated May 19, 2017, Hartford wrongfully terminated Ms. Wills' LTD benefits beyond May 18, 2017.

15.    The Plan at issue, as governed by ERISA and relied upon to deny Ms. Wills' LTD benefits states, in part:

**Disability** or **Disabled** means You are prevented from performing one or more of the Essential Duties of:

1) Your Occupation during the Elimination Period;

2) Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and

3) after that, Any Occupation.

16.    Using this test of disability, Hartford found Ms. Wills disabled and approved her LTD benefits for over two (2) years as Ms. Wills' cervical and lumbar post-traumatic sprain and strain syndrome, cervical nerve root impingement, cervical spine pain, cervical and lumbar radiculopathy, herniated lumbar intervertebral disc, lesion of left lumbosacral nerve root, and arm and shoulder pain prevented her from performing the essential duties of her own occupation or of any occupation.

17.    However, on May 19, 2017, Hartford reversed the course it had maintained for over two (2) years terminating Ms. Wills' LTD benefits. The

termination of LTD benefits was based in least in part upon an independent medical examination carried out by its paid consultant, Dr. Leon Sultan ("Dr. Sultan").

18.     At all relevant times, and prior to the termination of Ms. Wills' benefits, she was under the consistent care of her spine specialist, Dr. Sebastian Lattuga ("Dr. Lattuga"), internal medicine specialist Dr. Colin Clarke ("Dr. Clarke"), orthopedic surgeon Dr. Maxim Tyorkin ("Dr. Tyorkin"), as well as several consultants, physical therapists, and emergency room physicians.

19.     Dr. Lattuga provided a Provider Activity Level Report to Hartford on February 15, 2017 in which he noted that Ms. Wills was capable of sedentary work activity for only one hour per day at most, and was likewise restricted from heavy lifting, carrying, bending, or twisting.

20.     In his report of the independent medical examination conducted on April 26, 2017, Dr. Sultan concluded that Ms. Wills' post-traumatic derangement of the right shoulder and post-traumatic derangement of the cervical and lumbar spine with residual post-operative cervical and lumbar spine motion restriction prevented her from lifting or carrying more than fifteen (15) pounds using both hands. Dr. Sultan also determined that Ms. Wills was restricted from bending, squatting, stooping, or crawling.

21.     In spite of these findings, as well as medical evidence indicating an inability to perform even sedentary work, Hartford's vocational consultant

ultimately named four sedentary occupations that she deemed Ms. Wills capable of performing.

22.     Neither Hartford nor its vocational consultant considered the impact of Dr. Sultan's restrictions on bending, squatting, or stooping on Ms. Wills' capacity to lift any measurable weight, nor did they consider the restricted capacity to lift any weight due to inability to bend or stoop when determining Ms. Wills' level of functional capacity.

23.     Neither Hartford nor its consultants considered the opinion of Dr. Lattuga, who had opined that Ms. Wills was incapable of heavy lifting, carrying, bending, and twisting and was capable of sedentary activity for a maximum of only one hour per day.

24.     Hartford relied on the paid examiner's opinion over the opinion of Ms. Wills' treating providers, and by letter dated May 19, 2017 wrongfully terminated Ms. Wills' LTD benefits.

25.      Hartford's decision to terminate benefits solely focused on Ms. Wills' physical functionality and failed to consider her non-exertional limitations.

26.     At the time Hartford terminated the LTD benefits on May 19, 2017, it had no information, from Dr. Sultan's paid examination or otherwise, that altered in some significant way its previous decision to pay LTD benefits to Ms. Wills under the Any Occupation standard.

27.     At the time Hartford terminated the LTD benefits on May 19, 2017, it had no information, from Dr. Sultan's paid examination or otherwise, that showed Ms. Wills' medical condition had improved, when in fact, Ms. Wills' treating physician opined that her condition remained severe and preclusive of full-time work.

28.     By and through counsel in a letter dated November 15, 2017, Ms. Wills appealed the termination of her LTD benefits. Ms. Wills included with her appeal letter updated treatment records and a pain diary.

29.     On November 22, 2017, by and through counsel, Ms. Wills provided updated medical records from Franklin Health, pharmacy records, as well as several declarations.

30.     Emergency Room records from June 3, 2017 noted complaints of bilateral shoulder pain following a car accident.

31.     Shoulder pain persisted, along with low back pain, during a June 5, 2017 Emergency Room visit, and CT scans of the cervical and lumbar spine showed prior C5-7 anterior cervical fusion and discectomy as well as Grade I spondylolisthesis at L4-5, disc herniation at L3-4 and L4-5, and small left-sided protrusions at L2-3. Lumbar radiculopathy and shoulder strain were diagnosed.

32.     Between June 28, 2017 and September 20, 2017, Dr. Clarke consistently treated Ms. Wills for cervical and lumbar discopathy and radiculopathy,

8

right wrist sprain, left ankle strain and sprain, TMJ trauma, and right shoulder contusion. During this time, Dr. Clarke administered a series of five trigger point injections to the bilateral trapezius, cervical and lumbar paraspinals, and left piriformis.

33.     In treatment notes throughout the summer and fall of 2017, Dr. Clarke regularly commented that "the patient remains disabled from all work due to her injuries."

34.     EMG and nerve conduction studies performed on July 15, 2017 confirmed bilateral C5-6 and C6-7 radiculopathy as well as left L5-S1 radiculopathy.

35.     In support of her appeal, Ms. Wills submitted a declaration, pursuant to 28 U.S.C. § 1746, through which she outlined the effects of her disabling condition on her activities of daily living and her ability to return to work. Under penalty of perjury, Ms. Wills recounted a history of chronic pain since a January 2013 car accident which was then exacerbated by a June 2, 2017 car accident. This chronic pain was noted by Ms. Wills to prevent standing, walking, lifting, bending, sitting, and performing her former nursing duties, and also necessitated the use of a cane.

36.     Michal Taylor, the claimant's boyfriend, and Valerie Wills, her daughter, also provided declarations pursuant to 28 U.S.C. § 1746. Under penalty of perjury, Mr. Taylor stated that he had observed the claimant to experience difficulty with walking, balancing, extended sitting and standing, and carrying objects. Ms.

Valerie Wills also noted her mother's chronic, severe pain which hindered even simple tasks such as shopping, light cleaning, or walking the dog. Ms. Valerie Wills noted that the claimant required a cane when walking for extended periods and was unable to sit for prolonged periods due to back pain.

37.    In a letter dated December 11, 2017, Hartford informed Ms. Wills that an appeal review would not be conducted.

38.    A second letter issued on December 11, 2017 clarified that a later response to its independent medical examination was received from Dr. Lattuga, who disagreed with the report and provided June 2017 medical records documenting exacerbated pain from a recent car accident. However, Hartford stated that this response did not affect the decision to terminate Ms. Wills' LTD benefits and that Ms. Wills had the right to file another appeal.

39.    Ms. Wills responded to Hartford by and through counsel on December 22, 2017, inquiring as to why the appeal and additional documentation submitted in November 2017 were not reviewed or accepted as an appeal.

40.    On December 29, 2017, Hartford acknowledged the receipt of Ms. Wills' appeal.

41.    Despite providing proof of her disability both before the termination of benefits and throughout the appeals process, Hartford refused to award Ms. Wills' LTD benefits and issued a final termination by letter dated February 7, 2018.

42.     In the final determination letter dated February 7, 2018, Hartford relied on the opinions of paid medical reviewers Dr. A. Alen Nourian ("Dr. Nourian") and Dr. Andrew Seltzer ("Dr. Seltzer").

43.     Dr. Nourian, whom has never seen nor treated Ms. Wills, acknowledged only mild functional limitations and asserted that Ms. Wills was capable of full-time work activity, contrary to the opinions of Ms. Wills' treating physicians.

44.     In his report, Dr. Nourian noted Ms. Wills' complaints of exacerbated pain following a June 2, 2017 car accident, but stated that Ms. Wills failed to seek treatment from an Emergency Department until July 5, 2017. Notably, Dr. Nourian stated that "I found it strange that the claimant was seen and evaluated prior to her presentation in the ED on 6/5/17. The claimant was [seen] by Dr. Moy (PM&R) on 6/3/17 with the diagnoses of Cervical and Lumbar Strains and Left Ankle/Foot and Right Shoulder Pain with recommendations for conservative care including PT/Chiropractic and Acupuncture, Lidoderm Patch, and restrictions of no strenuous sports or heavy lifting and breaks every 20-30 minutes form tasks requiring sustained postures such as computer work."

45.     In his own report, Dr. Nourian listed numerous medical records including Emergency Department notes from both June 3, 2017, the day following the car accident, and June 5, 2017, the date later cited by Dr. Nourian as "strange."

46.    Ms. Will's initial physical therapy evaluation with Dr. Marvin Moy ("Dr. Moy") took place at Rutland Medical P.C. on June 13, 2017, and not June 3, 2017 as stated by Dr. Nourian, well after Ms. Wills' initial treatment for injuries sustained in the June 2, 2017 car accident.

47.    Despite noting Dr. Clarke's opinion that Ms. Wills was "totally restricted" as well as Dr. Moy's instructions to avoid tasks such as computer work involving sustained postures without frequent breaks, Dr. Nourian nevertheless concluded that Ms. Wills was fully capable of sustaining at least light level work duties on a full-time basis.

48.    Dr. Seltzer, whom has never seen nor treated Ms. Wills, concluded that she was capable of performing at least light work duties on a full-time basis, despite statements to the contrary from Ms. Wills' treating physicians.

49.    In his report, Dr. Seltzer noted numerous objective medical findings including EMG and nerve conduction studies showing cervical and lumbar radiculopathy; MRIs showing lumbar disc herniation and left shoulder tendinitis, tenosynovitis, and tearing; and examination observations detailing decreased ranges of motion of the lumbar and cervical spine, right shoulder, wrist, and left ankle; decreased motor strength and sensation in the bilateral deltoids, right upper extremity, and left L3-S1 distribution; and abnormal reflexes of the upper and lower extremities.

50.     Despite these observations, Dr. Seltzer selectively cited in his rationale examples in which range of motion or sensation were recorded as normal, and thus asserted that "based on these findings, it is feasible that the claimant is limited to light work…."

51.     Although both Dr. Nourian and Dr. Seltzer unsuccessfully attempted to contact Dr. Lattuga for his medical opinion, no attempts were made to consult with Ms. Wills' more recent medical providers.

52.     Although neither Dr. Nourian nor Dr. Seltzer had treated Ms. Wills, spoke to Ms. Wills, or spoke with her treating physicians, these paid reviewers opined that Ms. Wills now had the functionality to perform any occupation.

53.     Dr. Nourian's and Dr. Seltzer's opinions as reflected in the termination letter dated February 7, 2018, solely focused on Ms. Wills' physical functionality and failed to consider Ms. Wills' non-exertional limitations.

54.     Hartford paid Dr. Nourian One Thousand Dollars ($1000.00) for the opinion that Ms. Wills' disabilities did not restrict or limit her ability to work in any occupation.

55.     Hartford paid Dr. Seltzer One Thousand Dollars ($1000.00) for the opinion that Ms. Wills' disabilities did not restrict or limit her ability to work in any occupation.

56.     Following Dr. Nourian's and Dr. Seltzer's paid review, Hartford

referred Ms. Wills' claim for an Employability Analysis, which acknowledged that "Ms. Wills' physical functional capabilities were established by co-morbid orthopedic and pain management peer reviews" but did not consider the restrictions and limitations recommended by Ms. Wills' own treating physicians.

57.     Hartford did not allow Ms. Wills an opportunity to review and respond to Dr. Nourian's or Dr. Seltzer's paid reports, as Ms. Wills was only informed of the content of these reports in the letter terminating benefits dated February 7, 2018. Rather than providing Ms. Wills an opportunity to respond, Hartford informed Ms. Wills that she could "bring a civil action."

58.     Following this termination of LTD benefits, on May 23, 2018, Ms. Wills was informed by the Social Security Administration that she was deemed totally disabled as of August 15, 2014 forward.

59.     As of this date, Ms. Wills has been denied benefits rightfully owed to her under the Plan.

60.     Ms. Wills has met and continues to meet the Plan's definition of disabled.

61.     Ms. Wills has exhausted any applicable administrative review procedures and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

62.     Hartford's refusal to pay benefits has caused tremendous financial hardship on Ms. Wills.

## STANDARD OF REVIEW

63.     A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

64.     When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

65.     Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Hartford or to any other entity who may have adjudicated Ms. Wills' claim. Therefore, the Court should review Ms. Wills' claim for benefits under a *de novo* standard.

66.     Upon information and belief, Hartford evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

67.     Hartford has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Ms. Wills' claim for benefits should be reviewed by this Court under a *de novo* standard.

68.     In the alternative, if the Court finds that Hartford is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's

benefits constitutes a clear abuse of discretion as Hartford's decision to deny Ms. Wills' LTD benefits was arbitrary and capricious.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

69.     Hartford has wrongfully denied LTD benefits to Ms. Wills, in violation of the policy provisions and ERISA, for the following reasons:

(a) Ms. Wills is totally disabled, in that she is prevented from performing one or more of the essential duties of any occupation;

(b) Ms. Wills is entitled to disability benefits under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) Hartford failed to accord proper weight to the evidence in the administrative record showing that Ms. Wills is totally disabled;

(d) Hartford's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) Hartford failed to allow Ms. Wills a right to access information upon which it relied to make a final determination, and failed to allow Ms. Wills an opportunity to respond to said information, before it made

a final determination on her claim for LTD benefits;

(f) Hartford failed to obtain and consider relevant information pertaining to Ms. Wills' disability before it made a final determination on his claim for LTD benefits;

(g) Hartford wrongfully denied Ms. Wills a full, fair and impartial review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of denying her benefits claim;

(h) Hartford failed to give proper weight to Ms. Wills' own accounts regarding the debilitating effects of her pain;

(i) Hartford ignored the records and opinions of Ms. Wills' treating physicians which show that Ms. Wills is totally disabled, and instead based its decision to deny benefits on its internal review by Hartford staff members and its paid reviewers, most of whom had never seen or treated Ms. Wills, never spoke with her treating physicians about the nature of her disability, and who were not as qualified as Ms. Wills' treating physicians to formulate opinions regarding the nature and extent of her disability;

(j) Hartford failed to exercise reasonable flexibility in its claims review process to assure Ms. Wills a full, fair review, well-reasoned, and principled of her claim;

(k) Hartford administered Ms. Wills' claim for LTD benefits while acting under an inherent and substantial conflict of interest in that Hartford served both as fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Ms. Wills' interests in wrongfully terminating her LTD benefits and failing to administer the Plan as an impartial decision-maker, free of such conflict of interest, would;

(l) Hartford made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(m)   Hartford acted in bad faith by denying Ms. Wills' claim based upon the inability of Hartford's paid reviewers to find Ms. Wills disabled, and otherwise failed to administer the Plan honestly, fairly and in good faith, and to at all times act in Ms. Wills' best interests;

(n) Hartford terminated Ms. Wills' benefits without the support of any new information that altered in some significant way the previous decision to pay LTD benefits to Ms. Wills;

(o) Hartford terminated Ms. Wills' benefits without the support of any new information that showed improvement in Ms. Wills' medical condition, when in fact, her treating physicians opined that her condition remained disabling;

(p) Hartford failed to support the termination of benefits with substantial evidence;

(q) Hartford imposed a standard not required by the Plan's provisions, by requiring objective evidence of Ms. Wills' subjective medical conditions where such evidence cannot be reasonably provided;

(r) Hartford denied Ms. Wills' claim for a lack of objective medical evidence when Ms. Wills has provided ample subjective evidence of a disability and Hartford has not identified any objective evidence that Ms. Wills could have supplied to support the claim;

(s) Hartford failed to consider Ms. Wills' non-exertional limitations caused by her disability, such as the side effects of her prescribed medication, her ability to regularly attend work, and the effect her disability has on her concentration, persistence and pace when performing the material duties of any occupation;

(t) Hartford wrongfully denied Ms. Wills' LTD benefits in such other ways to be shown through discovery and/or hearing.

70.     As a result of the foregoing, the relief to which Ms. Wills is entitled includes: (1) monthly LTD income benefits to Ms. Wills, (2) payment of back benefits from May 18, 2017 to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress Hartford's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

71.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

72.     At all times relevant to this action, Ms. Wills was a participant of the Plan underwritten by Hartford and issued to North Shore – Long Island Health System Inc. and was eligible to receive disability benefits under the Plan.

73.     As more fully described above, the termination and refusal to pay Ms. Wills' benefits under the Plan for the period from at least on or about May 18, 2017 through the present constitutes a breach of Defendant's obligations under the plan and ERISA. The decision to deny benefits to Ms. Wills constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1.     A judgment ordering the applicable standard of review in this case is *de novo*;

2.     A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her LTD benefits owed to her through the Plan;

3.     In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4.     Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Ms. Wills' LTD benefits, that Ms. Wills is entitled to a continuation of future LTD benefits from Defendant pursuant to the Plan;

5.     Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff, enjoining Defendant from further violations of its fiduciary duties, and directing Defendant to take all actions necessary to administer

the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6.    A judgment ordering Defendant to pay Ms. Wills' LTD benefits from May 18, 2017 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7.    An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8.    For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 11th day of January, 2021.

/s/ Peter H. Burke_____
Peter H. Burke (ASB-1992-K74P)
pburke@burkeharvey.com
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone: 205-930-9091
Fax: 205-930-9054
*Attorney for Plaintiff Judith Wills*

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AT:**

Hartford Life Insurance Company
200 Hopmeadow St
Simsbury, CT 06089